UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CR-00079-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFERY LYNN GRINDSTAFF, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Jeffery Lynn Grindstaff's Emergency Motion for Reduction in Sentence [Doc. 64]. The United States (the "Government") responded in opposition to Defendant's Motion [Doc. 65], and Defendant replied [Doc. 67]. This matter is now ripe for resolution. For the reasons stated herein, Defendant's Motion [Doc. 64] is **DENIED**.

## I. BACKGROUND

On August 21, 2019, Defendant pleaded guilty to one count of conspiracy to distribute and possession with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). On June 11, 2020, this Court sentenced Defendant to a term of 120 months' imprisonment, followed by a five-year term of supervised release [Docs. 13, 18, 50]. Defendant is currently housed at FCI Sheridan, and his projected release date is December 25, 2027 [Doc. 64-3]. Defendant requested compassionate release from the warden on December 11, 2024, and submitted two more requests through counsel on January 26, 2026 and April 1, 2026. [Doc. 64-2]. The warden has yet to respond to these requests. [Doc. 64, pg. 3]. Following these requests, Defendant filed the instant motion. The Government opposes

1

Defendant's motion and argues that he does not meet the requirements for compassionate release [Doc. 65].

## II. LEGAL STANDARD

"A district court may modify a defendant's sentence only as provided by statute." *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009). The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, amended 18 U.S.C. § 3582(c)(1)(A) to provide district courts with the authority to modify a defendant's sentence and grant compassionate release

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment…after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission…

18 U.S.C. § 3582(c)(1)(A).[1]

Pursuant to this amendment, district courts may consider motions for compassionate release filed either by the Bureau of Prisons ("BOP") or by a defendant after the defendant has "exhaust[ed] the BOP's administrative process" or "thirty days after the warden received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Exhaustion of the administrative remedies is a "mandatory condition" to defendant-filed motions for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).

---

[1] The statute includes a separate basis for compassionate release which requires, among other prerequisites, that "the defendant is at least 70 years of age" and "has served at least 30 years in prison," but this provision does not apply to Defendant, as he is too young and has spent too little time in custody. 18 U.S.C. § 3582(c)(1)(A)(ii).

In addition to the procedural requirements, § 3582(c)(1)(A) "has identified three substantive requirements for granting relief." *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). The Court must: (1) find that "extraordinary and compelling reasons merit a sentence reduction"; (2) find "that the reduction is consistent with 'applicable' Sentencing Commission policy statements"; and (3) consider the factors in Section 3553(a), to the extent they apply. *Jones*, 980 F.3d at 1106 (quoting *Ruffin*, 978 F.3d at 1003-06). A motion for compassionate release may be denied when any of the three substantive requirements are not met. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). For instance, even if a defendant shows extraordinary and compelling reasons, "a district court may still deny relief if it finds that the 'applicable' § 3553(a) factors do not justify it." *Ruffin*, 978 F.3d at 1005. Further, "[e]ven when all [§ 3582(c)(1)(A)'s] conditions are met, the district court maintains discretion to grant or deny compassionate release." *United States v. Neidik*, No. 2:23-cr-00217, 2026 WL 775560, at *1 (S.D. Ohio Mar. 19, 2026) (citing *Jones*, 980 F.3d at 1101-02, 1106).

## III.    ANALYSIS

The Government does not dispute that Defendant has satisfied the procedural exhaustion requirement. Rather, the Government argues that he has not shown that compassionate release would be consistent with the substantive requirements of § 3582(c)(1)(A).

Assuming that there are extraordinary and compelling reasons warranting compassionate release, the § 3553(a) factors do not support such relief. Defendant participated in a conspiracy to distribute 50 grams or more of actual methamphetamine. [Doc. 30, ¶¶ 8-19]. Congress established a mandatory minimum sentence of ten years for this offense. Such a sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords meaningful deterrence. In this case, due to Defendant's extensive, and at times violent criminal

history,[2] Defendant had an advisory guideline range above the mandatory minimum.  Based on his applicable criminal history category of VI and an offense level of 29, the Court calculated Defendant's guideline range as 151-188 months.  Still, the Court sentenced him below that range to the statutory mandatory minimum term of 120 months' imprisonment followed by a five-year term of supervised release. [Docs. 50, 51].  Defendant has served 84 months of his sentence and has approximately eighteen months remaining.[3] [*See* Doc. 62-3].

In consideration of the foregoing, a sentence reduction would be inconsistent with the purposes of the § 3553(a) factors.  To be sure, the nature and characteristics of the Defendant have changed since his sentencing hearing in 2020.  At that time, he was diagnosed with anxiety and bipolar disorder, and he suffered from carpal tunnel, rheumatoid arthritis, and a history of kidney stones and degenerative disc disease.  He had also previously been diagnosed with major depressive disorder, adjustment disorder, suicidal gesture, polysubstance dependence, and antisocial personality disorder.  [Doc. 30, pgs. 25-26].  But around a year after his sentencing, in 2021, Defendant was hospitalized for six days because he was unable to eat on his own or care for himself.  This appears to be the first major indication that Defendant was suffering from additional mental health issues.  Two years later, he was diagnosed with Major Neurocognitive Disorder, classified as unspecified dementia.  He is now 61 years old.  Defendant and his fellow inmate have written to the Federal Defender Services of Eastern Tennessee on nine separate occasions to call attention to Defendant's daily struggles, claiming that Defendant is unable to remember things day to day, has balance issues, has fallen multiple times leading to bruises, is unable to write due to

---

[2]     Of particular significance to the Court's assessment of his criminal history, Defendant has three prior assault convictions, two stalking convictions, and three escape convictions. [Doc. 30, ¶¶ 41, 44, 45, 53, 54, 59, 61].

[3]     Defendant notes in his reply brief that his Individualized Needs Plan recommends halfway house placement for him as early as December 24, 2026, just under six months from now.

shaking, needs assistance with his daily dressing, has had restroom accidents, forgets to drink water with his medication, may need assistance with eating and bathing, and is increasingly tired from everyday tasks. It is clear from these letters that Defendant faces difficulty performing fundamental everyday tasks. His medical records support this finding, with one doctor noting in November 2025 that Defendant has demonstrated

> progressive cognitive decline across domains including executive functioning, learning and memory, and perceptual-motor abilities. Mr. Grindstaff has consistently struggled with retaining and recalling information, appropriately advocating for himself in regard to legal work and other complex tasks, and difficulties independently completing activities of daily living (e.g., buttoning his shirt, securing the button on pants). Mr. Grindstaff's cognitive deficits result in functional impairment in independence toward daily activities, and screening measures completed by both Health Services and Psychology Services consistently reflect diminished cognitive abilities.

[Doc. 64-1, pg. 55]. Additionally, his medical records indicate that he may have Parkinson's disease, though he has not been formally diagnosed at this time. Dementia, and Parkinson's disease if he does indeed have it, are progressive diseases, and Defendant's health will continue to decline as he ages.

Adding to his daily struggles, Defendant claims that he is not receiving proper medical care through the BOP. He was prescribed a walker to address his tremors, but the walker provided to him had missing wheels, no seat, and no brakes. Defendant claims that he fell multiple times due to the poor condition of the walker, and he refused to continue using it. The poor equipment is not his only issue with his medical care: Defendant contends that his condition should have been further assessed after he was diagnosed with unspecified dementia. As it is, he has gone years without knowing the specific etiology of his dementia (whether that is Parkinson's disease, Alzheimer's disease, or another cause). Defendant claims that he was recently scheduled for a neurological consultation, but due to BOP transportation issues the appointment was cancelled, and he was informed that a new appointment would not occur for at least six months.

5

In response, the Government argues that Defendant has not identified any necessary medical care which he has not received, or that the absence of any such care risks a serious deterioration in his health. And specifically in response to Defendant's claims that the BOP has failed to provide a specific diagnosis of the cause of his dementia, the Government notes that a "definitive diagnosis of the type of dementia can only be made at autopsy." [Doc. 65, pg. 7 (quoting National Institutes of Health, StatPearls, "Major Neurocognitive Disorder (Dementia)," *available at* https://www.ncbi.nlm.nih.gov/books/NBK557444/ (accessed June 12, 2026)].

Defendant's current medical condition and the quality of his care under the BOP are significant factors in the Court's evaluation, but they are not the only § 3553(a) factors the Court can and will consider. Releasing Defendant at this time would create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Further, it would fail to reflect the seriousness of the offense and provide just punishment, when Congress has clearly established that a minimum of 120 months' imprisonment is the appropriate disposition for Defendant's conduct. And, of heightened concern with this Defendant, granting compassionate release now would not promote respect for the law. Defendant has repeatedly shown that he does not have respect for the law; his lengthy criminal history demonstrates this, as do his multiple prior escapes from custody and his repeated probation violations. Indeed, there are few gaps longer than one to two years across Defendant's entire adult life where he was not in trouble with the law.

To that point, the sentence imposed must protect the public from further crimes of the Defendant. § 3553(a)(2)(c). It is not clear that Defendant's new health conditions would reduce the risk that he would reoffend. Defendant had engaged in his crimes while suffering from many of the health conditions he is currently diagnosed with, which included significant physical and

6

mental health conditions. Those conditions thus did not previously stop him from his criminal activity. And despite Defendant's participation in the non-residential drug abuse treatment program and 21 hours of educational programming, the BOP considers Defendant to be a "medium risk recidivism level," the second highest level. Accordingly, releasing Defendant early would be inconsistent with the 3553(a) factors.

Defendant asks the Court, as an alternative to a sentence reduction to time served, to convert the remainder of his sentence to home confinement. But when Defendant has been given an inch on prior sentences, he has taken a mile. He escaped from custody while at the Knoxville Community Services Center [Doc. 30, ¶ 44], while at a work release site [*id.* at ¶ 59], and while serving as a jail trustee at the animal shelter [*id.* at ¶ 61]. In light of these escapes, a sentence of home confinement is not an adequate detention method for Defendant.

Courts may deny compassionate release under the § 3553(a) factors even if "extraordinary and compelling" reasons would otherwise justify relief. *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) (citing cases); *see Jones*, 980 F.3d at 1102 (affirming decision to deny motion for compassionate release where the district court found for the sake of argument that an extraordinary and compelling circumstance existed in defendant's case but that the § 3553(a) factors counseled against granting compassionate release). That result is warranted here.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, Defendant's Emergency Motion for Reduction in Sentence [Doc. 64] is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

7